## Bucks v. Pennfield Corp.

*Kenneth C. Sandoe,* for plaintiff.
*Lawrence F. Stengel,* for defendant.

GATES, *P.J.*, June 30, 1989 — On September 4, 1985 plaintiff, Melissa M. Bucks, was injured at her place of employment, Grimes Poultry Processing Corporation in Fredericksburg, Pennsylvania. Her hand was drawn into the chicken breast skinning machine that she was operating resulting in the injuries claimed by plaintiff. The machine in question was designed and built by Grimes.

Plaintiff initially brought suit against Grimes, but Grimes enjoys immunity under the Workmen's Compensation Act. On August 20, 1987, after determining the corporate structure involved, plaintiff filed a complaint naming only defendant, Pennfield Corporation, located in Lancaster, Pa. The complaint alleges various independent acts of negligence relating to Pennfield's duty to oversee safety

matters at Grimes. At the time of the accident Grimes was a wholly owned subsidiary of defendant.

Defendant filed a motion for summary judgment, claiming that Pennfield was under no duty to supervise the safety of the workplace at its subsidiaries, that no such duty had been undertaken by defendant, and that the subsidiaries performed their own safety operations. Defendant's motion goes on to argue that plaintiff is unable to establish the elements of a cause of action.

Defendant also filed a motion for protective order, claiming that plaintiff's interrogatories requesting financial information would subject defendant to unreasonable annoyance and oppression and constitute an invasion of privacy in violation of Pennsylvania Rule of Civil Procedure 4011. Defendant argues that such information should only be discoverable after plaintiff shows justification for claiming punitive damages.

A motion for summary judgment must be considered in light of Pennsylvania Rule of Civil Procedure 1035. That rule is as follows:

"The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b), 42 Pa.C.S. In considering a motion for summary judgment the following standard is applicable:

"Summary judgment should not be entered unless a case is free from doubt. The moving party must prove that there is no genuine issue of material fact to be tried and that it is entitled to judgment as a matter of law. Moreover, the record must be viewed in the light most favorable to the non-

moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Richland Mall Corporation v. Kasco Construction Co. Inc.*, 337 Pa. Super. 204, 210, 486 A.2d 978, 981 (1984).

"The function of summary judgment proceedings is to avoid a useless trial but is not, and cannot, be used to provide for trial by affidavits or trial by depositions." *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989); Goodrich-Amram 2d §1035:1.

The Pennsylvania Workmen's Compensation Act provides that the remedy of an injured employee against his or her employer is exclusively the remedy provided by the act. An exception to the exclusivity bar has been recognized in the parent-subsidiary situation. *Kiehl v. Action Manufacturing Company,* 517 Pa. 183, 535 A.2d 571 (1987). In *Kiehl* the court stated that "*Mohan* makes it clear that in Pennsylvania a parent corporation and its subsidiary must be regarded as separate entities in regards to the Workmen's Compensation Act." *Kiehl* at 190, 535 A.2d at 574.[*] The parties agree that Pennfield and Grimes are separate entities. The parent corporation may be held liable for its independent acts of negligence even though the employee is barred from suing the subsidiary/employer and has been compensated under the Workmen's Compensation Act. *Kiehl, supra.*

Plaintiff's complaint alleges the following independent acts of negligence of defendant:

"(31)(a) Establishing a safety committee to over-

---

[*] In *Mohan v. Publicker Industries,* 422 Pa. 588, 222 A.2d 876 (1966), the court looked at the function performed by the employee as it related to the operations of the parent and subsidiary to determine that the subsidiary was the employer so that the injured employee could bring a suit against the parent corporation.

see safety factors of the corporation and its wholly owned subsidiaries, which said safety committee was and is totally inept and failed to know, investigate or oversee the activities of the corporation or its wholly owned subsidiaries, which said investigation would have revealed the unsafe design, manufacture and dangerous condition of the breast skinning machine in question;

"(b) In establishing a safety committee where the members thereof are not knowledgeable in or are inadequately trained to oversee safety factors of the design and manufacture of machinery, as the breast skinning machine used in this case, whereby any such trained safety personnel would not have permitted an unguarded roller machine device at the point of operation without a safety switch within access of the operator to be used;

"(c) In allowing its subsidiary corporations, including Grimes Poultry Processing Corporation, t/a/ d/b/a Pennfield Farms and/or Pennfield Farms-Chicken, to design, manufacture, fabricate and use as part of its business, dangerous machinery, without an inspection by qualified safety engineers and personnel;

"(d) In permitting carte blanche financial contribution to the development, design, fabrication and use of said machinery, including the breast skinning machine in question, without adequately insuring the incorporation of safety factors into said development, design, fabrication and use;

"(e) In establishing a policy of financial contribution to the development, design, fabrication and use of complex and dangerous machinery without any review in regard to safety, or establishing any policies in regard to safety of the workers and users, including plaintiff, of said machinery, including the breast skinning machine in question;

478

"(f) In specifically approving the design, manufacture, fabrication and use of complex and dangerous machinery without approving or implementing any guidelines for the safety of users of said machinery;

"(g) In specifically approving the design, manufacture, fabrication and use of complex and dangerous machinery without approving or implementing any guidelines for the inspection by qualified safety engineers and personnel for the safety of use of said equipment.

"(h) In failing to hire or train competent personnel to insure that adequate and appropriate safety factors were to be considered and incorporated in the design, manufacture, fabrication and use of the said products, including the breast skinning machine in question;

"(i) In failing to supervise and be aware of what machinery was being manufactured and developed by various subsidiaries, including Grimes Poultry Processing Corporation, t/a/d/b/a Pennfield Farms and/or Pennfield Farms-Chicken, to insure sufficient and appropriate safety factors would be implemented in the planning, manufacture and use of said machinery;

"(j) In failing to set a policy or requirement that safety considerations must be considered in the design, manufacture, fabrication and use of said products;

"(k) In knowing, or in the exercise of reasonable care, should have known, that the subsidiary was using dangerous and defective machinery in its day to day operations, which were approved by defendant, Pennfield Corporation;

"(l) In knowing, or in the exercise of reasonable care, should have known, that personnel hired to design, manufacture and fabricate said machinery,

and approved ultimately by defendant, Pennfield Corporation, were not qualified and were inadequately trained to consider safety factors in the design, manufacture and fabrication of such machinery;

"(m) In knowing, and approving, or in the exercise of reasonable care, should have known, of the use of an unsafe and dangerous machine, without a safety switch and unguarded at the point of operation, known as a breast skinning machine, by its subsidiary, Grimes Poultry Processing Corporation, t/a/d/b/a Pennfield Farms and/or Pennfield Farms-Chicken;

"(n) In failing to comply with and in fact to violate applicable federal, state, local, industrial, trade and/or commercial regulations concerning said machine and safety design;

"(o) Such other acts or omissions constituting negligence and/or gross negligence, or wanton conduct, as shall become evident during pretrial discovery and/or at the trial of this case."

Defendant argues, however, that it had no duty to oversee safety measures at the subsidiary plants. In support of this contention defendant asserts that the depositions and documents produced show the responsibility for all safety measures was with Grimes and that defendant had neither a legal duty to undertake, nor did it otherwise undertake, responsibility for safety at Grimes.

The deposition testimony of various individuals is cited in support of defendant's contention that Pennfield was not involved with the design or manufacture of the machine in question. The decision to build the machine was that of the Grimes plant manager, Jerry Weaver. The machine was assembled by the maintenance supervisor, Kenny McQuate, and the maintenance crew of Grimes.

Defendant argues that under the circumstances no duty was created for Pennfield to ensure safe working conditions at Grimes. Defendant had a corporate safety committee in place at the time of the accident. Defendant argues that this committee was only advisory so that defendant had not specifically undertaken the responsibility of overseeing safety matters at the subsidiary plants. Each of the subsidiaries, including Grimes, had its own active safety committee and the corporate committee merely functioned as a coordinating body for those committees. The corporate safety committee did not concern themselves with the subsidiaries' manufacture of machinery, nor did it inspect the subsidiary plants.

The deposition of defendant's former employer relations manager indicates, however, that the ultimate responsibility for safety at the subsidiaries rested with the division manager who was an employee of defendant. Furthermore, the corporate safety committee was to oversee the activities of the subsidiary safety committees.

Both parties ask that the so-called Good Samaritan Rule be considered. That rule is stated as follows in section 324A of the Restatement (Second) of Torts:

"§ 324A. *Liability to Third Person for Negligent Performance of Undertaking* — One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

"(a) his failure to exercise reasonable care increases the risk of such harm, or

"(b) he has undertaken to perform a duty owed by the other to the third person, or

"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Defendant argues that the deposition testimony cited above shows that there was no specific undertaking so that defendant may not be held liable for failure to take safety measures at Grimes. See *Blessing v. United States,* 447 F.Supp. 1160 (E.D. Pa. 1978). Plaintiff argues that there is evidence on the record that defendant did undertake responsibility for safety at the subsidiaries.

Defendant's motion must be denied, because to grant it would result in a trial by depositions. Viewing the record in the light most favorable to plaintiff, the non-moving party, it is also evident that there is a genuine issue of material fact to be tried. It will be for the jury to determine where ultimate responsibility for safety rested and whether the duty of the corporate safety committee to oversee was a specific undertaking.

In light of this conclusion we need not address defendant's argument that there was no legal duty to provide safety measures at Grimes simply because of the parent-subsidiary relationship. Likewise, we need not address plaintiff's arguments based on various sections of the Restatement of Agency.

Defendant seeks a protective order so that it need not provide the financial information plaintiff seeks to support her claim for punitive damages. The four interrogatories in question ask for defendant's state and federal tax returns for the last five years, the corporate minutes of the last five years, any disclosure statements filed with the Securities and Ex-

change Commission within the last five years, and any financial statements prepared within the last five years.

Under Pennsylvania Rule of Civil Procedure 4003.1, a party may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the action, subject to the limitations of rule 4011. The net worth of a defendant is admissible to aid the jury in determining the amount of punitive damages that will act as a deterrent to the defendant. *Thomas v. E.J. Korvette Inc.,* 329 F.Supp. 1163 (E.D. Pa. 1971), rev'd. on other grounds 476 F.2d 471 (3d Cir. 1973).

The issue of discoverability of financial information to support a claim for punitive damages is unsettled because there are no appellate court opinions on this issue. Defendant cites several cases holding that discovery of a defendant's financial situation may not be permitted until the plaintiff has shown prima facie proof of the right to recover punitive damages. See *King v. Logue,* 9 D.&C. 3d 137 (1978); *Baldwin v. McGrath,* 8 D.&C. 3d 341 (1978); *Harvey v. Brobeck,* 73 D.&C. 2d 483 (1975); *Pater v. Tomsic,* 57 D.&C. 2d 340 (1972). Defendant acknowledges, however, that in *Sprague v. Walter,* 23 D.&C. 3d 638 (1982), discovery of financial information of the defendant was permitted.

In *Sprague* the court stated that the burden should be on the defendant to show why discovery should not be permitted, unless plaintiff relies only on the pleadings. There it was stated that the court need not evaluate the evidence and make a determination that the claim for punitive damages is supported on the record. Rather, the pleadings, any discovery, and any future proceedings are merely to be considered. *Sprague, supra.*

Defendant seeks to distinguish *Sprague* and ar-

gues that the record fails to support a claim for punitive damages, so that it is unlikely that punitive damages will be an issue at trial. Pennsylvania law recognizes the following principles of the Restatement of Torts regarding punitive damages:

"Punitive damages may be awarded for conduct that is outrageous, because the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." Restatement (Second) of Torts §908(2). See *Martin v. Johns-Manville Corporation,* 508 Pa. 154, 494 A.2d 1088 (1985).

The act or failure to act must be intentional, reckless, or malicious. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984). But "punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." *Martin* at 170, 494 A.2d at 1097.

Based upon the pleadings and certain items of discovery plaintiff is entitled to discovery of the financial material. The record includes more than mere averments in plaintiff's complaint.

Plaintiff has appended to her brief a letter received in discovery. The letter was written by Jerry Weaver, Manager of the Grimes plant. The letter includes the following:

"The machine in question was not designed with a point-of-operation guard. Therefore, the charge that we removed the guard because it slowed the process is false.

"When we first began to experiment with manufacturing a breast skinning machine, the original

model did have a point-of-operation guard. However, due to unsatisfactory machine performance and operational problems with the original model, we removed the original machine and redesigned a completely new machine."

This letter shows certain individuals at Grimes were aware of the dangers involved with this type of machinery because the first machine was designed with a guard device. From this evidence it may possibly be found that defendant willfully and recklessly disregarded the safety of the employees who used the machine.

As previously stated, the deposition of Nancy Cunningham, the former employer relations manager at the Grimes plant, testified that defendant's district manager was ultimately in charge of safety at the subsidiaries such as Grimes. Defendant must have known of the dangerous condition of the machine but nothing was done to correct the problem. Furthermore, defendant granted its subsidiaries authority to develop and build machinery up to a specified cost without taking measures to ensure that the authority delegated was being exercised correctly.

Plaintiff also presents the affidavit of Robert C. Reed and the deposition testimony of Mary Fry in support of her claim for punitive damages. Both of these individuals attest to the known dangers of the machine prior to the accident. Finally, plaintiff presents the report of an expert who examined the machine in question and opined that the machine was in a highly dangerous condition and that it was almost a certainty that someone would be injured sooner or later.

It should be noted that the items requested are items that have already been prepared and their production would not cause unreasonable annoy-

ance to defendant. Defendant is a corporation and production of its financial records would not be an invasion of privacy as it might be if a private individual defendant were involved.

Defendant argues that if the issue of punitive damages does go to the jury plaintiff could then be provided with the financial material requested. Plaintiff argues, on the other hand, that defendant's business structure is so complex that an accountant will be employed as an expert witness. To avoid delay or prejudice plaintiff requests that the documents be produced before trial. That would allow plaintiff's case to be adequately prepared before trial. As in *Sprague* plaintiff will be afforded pretrial discovery rather than in-trial discovery.

## ORDER

And now, June 30, 1989, for the reasons set forth in the accompanying opinion defendant's motion for summary judgment and motion for protective order are denied. Defendant is directed to comply with plaintiff's interrogatories requesting tax returns, corporate minutes, Securities and Exchange Commission disclosure statements, and financial statements.