J-E01001-23

2023 PA Super 258

| | | |
|---|---|---|
| JOHN BROWN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| GEORGE GAYDOS, AN INDIVIDUAL, | : | No. 1132 WDA 2021 |
| T/D/B/A GAYDOS CONSTRUCTION | : | |

Appeal from the Judgment Entered April 16, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD18-006991

BEFORE:  PANELLA, P.J., LAZARUS, J., OLSON, J., STABILE, J., DUBOW, J.,
NICHOLS, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

OPINION BY McCAFFERY, J.:                    **FILED: DECEMBER 7, 2023**

John Brown (Brown) appeals from the order entered in the Allegheny County Court of Common Pleas granting summary judgment in favor of George Gaydos (Gaydos), as an individual and doing business as Gaydos Construction, in this negligence action seeking damages for a work-related injury Brown suffered while operating a skid loader owned by Gaydos. Because we conclude the record contains genuine issues of material fact concerning whether Gaydos is statutorily immune from liability under Pennsylvania's Workers' Compensation Act (WCA)[1] as Brown's employer or co-employee, we reverse the trial court's order granting summary judgment and remand for further proceedings.

---

[1] **See** 77 P.S. § 1, *et seq*.

The relevant facts underlying this matter are summarized by the trial court as follows:

> In 2007 or 2008, . . . Gaydos began doing construction work as a sole proprietor using the name Gaydos Construction. [Gaydos], as a sole proprietor, did general construction work with a focus on heating, air conditioning, concrete and masonry. For [the] business, [Gaydos] purchased two dump trucks, a utility truck, a skid loader and an assortment of tools. On April 9, 2016[, Gaydos] and his cousin, Mark Raymond, signed a partnership agreement to operate a business under the name American Concrete Solutions[ (ACS)]. A few months later[, they] filed a Certificate of Organization Domestic Limited Liability Company with the Pennsylvania Department of State[.]

> [Gaydos], on occasion, continued to bid on heating and air conditioning jobs as a sole proprietor. But, all concrete and masonry jobs were bid and performed by [ACS]. The construction equipment and tools owned by [Gaydos], including the skid loader, continued to be owned by him. [Gaydos] and [Raymond], who also owned construction equipment and tools, agreed that each of them would furnish any equipment or tools they owned individually that were needed to perform the work on [ACS's] jobs. They agreed that [ACS] would not own those tools and equipment and would not compensate either of them for use of those tools and equipment.

> [Brown] began working as an [ACS] employee on September 1, 2016. On that day, [ACS] was preparing to pour a flat slab of concrete inside a pole building located in the City of Pittsburgh. [Gaydos] was at the job site "first thing in the morning, and then . . . left to go pay a vendor for some stone." The skid loader owned by [Gaydos] was at the site. At approximately 11:00 a.m., as [Brown] "attempted to enter the subject skid loader, the arm of the skid loader caught [Brown's] body, crushing him between the top of the cab and the arm of the bucket and subsequently, dropped [him] to the ground." [Brown] was seriously injured and thereafter made a claim for workers compensation benefits from [ACS]. The workers compensation claim was not disputed, and as of June of 2019, approximately $561,000 had been paid to [Brown] for lost wages and to medical providers for medical treatment.

Trial Ct. Op., 7/13/21, at 1-2 (footnote, some quotation marks, & record citations omitted).

On May 31, 2018, Brown initiated this civil action against Gaydos, alleging his negligence in improperly maintaining the skid loader and failing to supervise or train Brown on its use.[2]  On January 5, 2021, Gaydos filed a motion for summary judgment asserting, *inter alia*, that Brown's claims were barred by the WCA.[3]  Brown filed both a response to Gaydos' motion, and a cross-motion for summary judgment, asserting Gaydos was not his employer as defined in the WCA and, therefore, not immune from suit.  **See** Brown's Response & Brief in Opposition to [Gaydos'] Motion for Summary [Judgment], 3/3/21, at 3-4; Brown's Motion for Summary [Judgment], 3/3/21, at 5, 7-8. Thereafter, Gaydos filed a brief in support of his motion, again asserting he was immune from liability as Brown's employer, or, alternatively, that he was immune as Brown's co-employee pursuant to Section 72 of the WCA.[4]  On

---

[2] Brown also named Gaydos Construction & Asphalt Paving Co. Inc. as a separate defendant.  **See** Brown's Complaint, 5/31/18, at ¶ 2.  However, it was later determined that company was not a proper party to this action, and, by consent of counsel, it was dismissed as a defendant.  **See** Order, 9/8/21. In addition, the trial court granted Brown's motion to amend the caption to include Gaydos' sole proprietorship, Gaydos Construction.  ***Id.***

[3] **See** 77 P.S. § 481(a) (an employer's liability under WCA is "exclusive and in place of any and all other liability" to injured employee).

[4] **See** 77 P.S. § 72 (providing immunity from liability to co-employees when injured employee receives workers' compensation benefits and act occurred while workers were "in the same employ").

March 18, 2021, the trial court entered an order denying both motions for summary judgment. *See* Order, 3/18/21.

Eight days later, on March 26, 2021, Gaydos requested the trial court amend its order to permit an interlocutory appeal by permission pursuant to Pa.R.A.P. 1311(a); Brown opposed the request. Thereafter, on April 16, 2021, the trial court entered the following order: (1) denying Gaydos' request to certify the March 18th interlocutory order as appealable; (2) granting Gaydos' request to reconsider the cross-motions for summary judgment;[5] (3) denying Brown's motion for summary judgment; (4) **granting Gaydos' motion for summary judgment**; and (5) entering judgment in favor of Gaydos and against Brown. *See* Order, 4/16/21.

Brown filed two notices of appeal, one challenging the order denying his motion for summary judgment (docketed at 591 WDA 2021), and the other challenging the order granting Gaydos' motion for summary judgment (docketed at 592 WDA 2021).[6] On August 6, 2021, this Court, by *per curiam* order, quashed both appeals, concluding they were "duplicative of each other"

---

[5] The record does not include any written request by either party seeking reconsideration of the court's March 18, 2021, order. However, in an unrelated filing, Brown averred that the trial court conducted oral argument on Gaydos' motion to amend on April 14, 2021, at which time it "*sua sponte*, entertained re-argument and reconsidered its prior ruling on the cross-motions for summary judgment." Brown's Motion to Correct Case Caption, 9/8/21, at 5. There is no transcript from the April 14th proceeding.

[6] Brown later complied with the trial court's order directing him to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

and interlocutory since "claims remained against Gaydos Construction & Asphalt Paving Co., Inc. . . ." 591 & 592 WDA 2021, Order, 8/6/21.

On September 8, 2021, Brown requested the trial court correct the case caption to reflect that he was suing Gaydos personally and to the extent he was operating a sole proprietorship, Gaydos Construction. *See* Motion to Correct Case Caption, 9/8/21, at 4, 6-8. Although Gaydos opposed the motion, on September 8, 2021, the trial court entered an order which: (1) dismissed Gaydos Construction & Asphalt Paving Co. Inc. as a defendant "[b]y consent of counsel[;]" and (2) granted Brown's motion to correct the caption to reflect the defendant as "George Gaydos, Individually and t/d/b/a Gaydos Construction." Order, 9/8/21. This timely appeal followed.

When the matter was first before this Court, a divided three-judge panel determined that although there was a genuine issue of material fact whether Gaydos was Brown's employer under Section 481(a) of the WCA, the record supported the trial court's grant of summary judgment in favor of Gaydos as Brown's co-employee under Section 72. Thus, the panel affirmed the judgment in favor of Gaydos. Brown requested *en banc* review, which we granted, and now presents the following claim:

> Whether the Majority erroneously concluded Gaydos/[Gaydos Construction] was immune from third-party liability as Brown's co-employee?

Brown's Substitute Brief at 3 (some capitalization omitted).

When considering an order granting summary judgment, we may reverse only "if there has been an error of law or abuse of discretion." **In re Risperdal Litigation**, 223 A.3d 633, 639 (Pa. 2019).

> [S]ummary judgment is appropriate only in those cases where the record **clearly demonstrates that there is no genuine issue of material fact** and that the moving party is entitled to judgment as a matter of law. The trial court must take all facts of record and reasonable inferences therefrom in a **light most favorable to the non-moving party**. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, **may only grant summary judgment where the right to such judgment is clear and free from all doubt**.

**Id.** (citations & quotation marks omitted; emphasis added). **See also** Pa.R.C.P. 1035.2(1). Thus, "if there is relevant evidence that a jury could reasonably credit that would allow the non-moving party to prevail, then judgment as a matter of law would be inappropriate." **Weaver v. Lancaster Newspapers, Inc.**, 926 A.2d 899, 902 (Pa. 2007). When, as here, the issue concerns whether there are genuine issues of material fact, we review a question of law so that "our standard of review is *de novo* and our scope of review is plenary." **Risperdal Litigation**, 223 A.3d at 639 (citation omitted).

By way of background, the WCA requires employers to pay employees who are injured on the job workers' compensation benefits regardless of negligence. **Dobransky v. EQT Prod. Co,** 273 A.3d 1133, 1134 (Pa. Super. 2022) (*en banc*), *appeal denied*, 284 A.3d 1188 (Pa. 2022).

> In exchange for receiving these benefits without having to prove negligence, employees may not sue their employers in tort for injuries they incurred in the course of their employment. **See** 77

- 6 -

P.S. § 481(a). In other words, with respect to work-related injuries, the employers have immunity from tort liability.

*Id.*

Employer immunity is codified at Section 481, which provides, in relevant part:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . . or occupational disease[.]

77 P.S. § 481(a) (footnotes omitted). *See also* 77 P.S. § 411(1)-(2) (defining "injury," "personal injury," and "injury arising in the course of his employment").

Nevertheless, the courts of this Commonwealth have recognized the "dual capacity" doctrine, which provides:

[A]n employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations **independent of those imposed on him as an employer**.

*Neidert v. Charlie*, 143 A.3d 384, 388 (Pa. Super. 2016) (citations omitted & emphasis added). This narrowly-applied doctrine, however, is inapplicable when "the employee's compensable injury occurred while he was actually engaged in the performance of his job." *Id.* at 390 (emphasis omitted), *citing* *Heath v. Church's Fried Chicken, Inc.*, 546 A.2d 1120, 1121 (Pa. 1988).

In addition to **employer immunity**, the WCA provides immunity to a co-employee whose negligent actions caused the claimant's injuries, so long

as the injury occurred while the co-employee was "in the same employ" as the injured claimant. **See** 77 P.S. § 72.[7] **See also Apple v. Reichert**, 278 A.2d 482, 485 (Pa. 1971) (explaining the WCA is "clearly phrased to protect all co-employes in all situations where negligent conduct of one employe may cause injury to a fellow employe, provided only that the injury in question is one that is compensable under the Act."). Under the Act, the term "co-employee" includes managers, executives, and even those who have an ownership interest in the employer. **See** 77 P.S. § 22 (defining "employe" to include "every executive officer of a corporation elected or appointed"); **Jadosh v. Goeringer**, 275 A.2d 58, 59-60 (Pa. 1971) (employer's vice president and general manager, who had "responsibility [for] supervision of operations[,]" was immune from liability as co-employee when claimant was injured at work using "defective press"); **Vosburg v. Connolly**, 591 A.2d 1128, 1129, 1133 (Pa. Super. 1991) (although employer's co-owner was co-

_____

[7] Section 72 provides:

> If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

77 P.S. § 72. Notably, this section provides an exception for "intentional wrong[s]" — thus, co-employees cannot claim immunity from a civil action if they intentionally caused the claimant's injuries. **See id.** Brown does not contend that Gaydos committed an "intentional wrong" in the present case.

employee of claimant under WCA, they were not immune from liability because they committed an "intentional assault").

Preliminarily, we note that that the trial court granted summary judgment on two bases: (1) Gaydos was immune from liability as Brown's employer; and (2) Gaydos was immune from liability as Brown's co-employee. *See* Trial Ct. Op. at 3-6. Although the original three-judge panel unanimously agreed the record contained a genuine issue of material fact regarding whether Gaydos was Brown's **employer**, neither of the parties briefed that issue on *en banc* review. However, because we consider it to be a threshold matter, we first address whether the record clearly establishes Gaydos was Brown's employer as defined under the WCA.[8]

As noted *supra*, Section 481(a) provides that an employer's payment of benefits under the Act is the exclusive remedy available to an employee injured on the job. *See* 77 P.S. § 481(a). The "determination regarding the existence of an employer/employee relationship is a question of law that is determined on the unique facts of each case." *Universal Am-Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 762 A.2d 328, 330-31 (Pa. 2000) (citation omitted). The WCA defines an "employer" as

_____

[8] Although the order granting reargument was not limited to the co-employee immunity claim, both parties proceeded as if that was the only issue on *en banc* review. However, we decline to find that the lack of supplemental briefing regarding the employer immunity claim waived the issue for our review. Notably, Gaydos did not request reargument or reconsideration of that issue when the original panel unanimously ruled in Brown's favor.

"synonymous with master" — the right to control the work of another and the manner in which the work is performed are deemed the most relevant factors in determining whether an employer-employee relationship exists under the WCA. *See* 77 P.S. § 21; *Universal Am-Can*, 762 A.2d at 333; *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 855 (Pa. Super. 2012) ("A master is one who stands to another in such a relation that he not only controls the results of the work of that other, but also may direct the manner in which such work shall be done.") (citation omitted).

"[I]t is the existence of the right to control that is significant, irrespective of whether the control is actually exercised." *Universal Am-Can*, 762 A.2d at 333 (emphasis omitted). Thus, an employer-employee relationship exists under the WCA "where the alleged employer possesses the right to select the employee; the right and power to discharge the employee; the power to direct manner of performance; and the power to control the employee." *Schriver v. Workers' Compensation Appeal Board (Department of Transportation)*, 176 A.3d 459, 463 n.11 (Pa. Cmwlth. 2017) (citation omitted).[9]

Here, there is no dispute that Gaydos held an ownership interest in ACS and had the ability to direct ACS employees, including Brown, with respect to

---

[9] While we are not bound by decisions of the Commonwealth Court, "such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime*, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010) (citation omitted).

the work to be performed and the equipment that could be used for each task. However, as an LLC, ACS was a distinct legal entity and, therefore, Gaydos was not personally responsible for ACS's legal obligations, such as maintaining workers' compensation insurance for its employees. *See Kiehl v. Action Manufacturing Co.*, 535 A.2d 571, 574-75 (Pa. 1987) (parent corporation of subsidiary that employed injured worker was not entitled to invoke WCA employer immunity bar to worker's suit at common law where parent had intentionally formed a separate entity in order to shield itself from the subsidiary's liabilities and had distinct operational functions from the subsidiary). Thus, Brown filed his workers' compensation claim against ACS rather than Gaydos or Gaydos Construction, and ACS, through its insurer, paid workers' compensation benefits to Brown. *See* Brown's Response & Brief in Opposition to [Gaydos'] Motion for Summary [Judgment] at Exhibits 1-2.

Moreover, Gaydos was not the exclusive owner of ACS, but rather, he ran the company with his business partner, Raymond. As Gaydos recognized, Raymond also had authority to act on behalf of ACS and was responsible for ACS staffing decisions. *See* Deposition of George Gaydos, 9/10/20 (Gaydos Deposition), at 51.[10] Indeed, Raymond hired Brown directly without Gaydos'

_____

[10] Excerpts from Gaydos' deposition are attached as exhibits to the following documents: (1) Brown's Motion for Summary [Judgment], Exhibit 2, pp. 8-9, 11, 16, 18-19, 25-26, 36-38, 40-51, 82, 84-85, 91-93, 95-96, 106; (2) Brown's Addendum to Motion for Summary [Judgment], 3/10/21, Exhibit 1, pp. 49, 68; (3) Gaydos' Motion for Summary Judgment, 1/5/21, Exhibit E, pp. 8-13, 44-48; (4) Gaydos' Reply Brief in Support of Motion for Summary *(Footnote Continued Next Page)*

participation on the date Brown sustained his injury, September 1, 2016. *Id.* at 51, 59. Furthermore, the partnership agreement between Gaydos and Raymond, upon formation of the LLC, provided that Gaydos did **not** have the exclusive authority to run ACS; instead, financial and management decisions required the unanimous approval of both ACS principals. *See* Brown's Motion for Summary [Judgment], Exhibit 4, Partnership Agreement, 4/19/16, at ¶¶ 14, 21. Similarly, the profits and losses for the business were required by the partnership agreement to be split equally between Gaydos and Raymond. *Id.* at ¶ 15.

In light of the fact that Gaydos did not directly employ Brown and did not exert exclusive control over ACS, we conclude that there remains a genuine issue of material fact as to whether Gaydos was Brown's "master" under the WCA. *See* 77 P.S. § 21. Accordingly, the trial court erred by granting summary judgment in favor of Gaydos on the basis of the employer immunity set forth in Section 481(a). *Cf. Lutjens v. Bayer*, 3165 EDA 2018 (Pa. Super. Aug. 27, 2019) (unpub. memo at 13-15) (holding that defendant, who was the sole member of LLC that employed the plaintiff, was also the employer for purposes of WCA employer immunity where defendant had exclusive authority to hire, fire, and direct the activities of the LLC's

---

Judgment, 3/8/21, Exhibit E-2, pp. 58-61, 110-13; and (4) Brown's Response & Brief in Opposition to [Gaydos'] Motion for Summary [Judgment], Exhibit 3, pp. 17-19, 31. For ease of reference, we will simply cite to "Gaydos Deposition" with the pertinent page number.

employees).[11]  Furthermore, because there remains a triable issue of fact as to whether Gaydos was Brown's employer, we need not address whether the dual capacity exception to WCA employer immunity has any application here. *See Neidert*, 143 A.3d at 388 (dual capacity doctrine is exception to **employer** immunity).

Turning to the primary issue before us, we reiterate that the trial court granted summary judgment on the alternative basis that Gaydos was Brown's co-employee at the time of the accident, and, therefore, entitled to immunity under Section 72 of the WCA.  Relying on *Bell v. Kater*, 943 A.2d 293 (Pa. Super. 2008), Brown argues the record does not support a clear finding that he and Gaydos were "in the same employ at the time of the accident," as opposed to merely employed by the same employer.  *See* Brown's Substitute Brief at 12-14, *citing Bell*, 943 A.2d at 297-98.  Rather, he contends Gaydos is liable as "the owner/operator of a negligently maintained skid loader that he loaned to a separate business entity."  *Id.* at 14.

In support of his position, Brown emphasizes the following:  (1) "there is no competent evidence that Gaydos/[Gaydos Construction] operated or supervised [the] use of the skid loader on the day in question[;]" (2) Gaydos "expressly advised ACS workers to refrain from using the skid loader because it was his personal equipment and he was the only person permitted to use

---

[11] Although **Lutjens** is an unpublished decision, we cite to it for its persuasive value.  *See* Pa.R.A.P. 126(b) (unpublished, non-precedential Superior Court decisions filed after May 1, 2019 may be cited for their persuasive value).

it[;]" (3) "Gaydos[ or Gaydos Construction] insured the skid loader under a separate policy of insurance from ACS[;]" and (4) neither Gaydos nor Gaydos Construction "formed a contractual relationship with or between it and ACS to define the terms of use for the loaned equipment, or to identify the limits of liability and/or indemnification[.]"  Brown's Substitute Brief at 16-18, 20. Accordingly, Brown insists the record contains a genuine issue of material fact as to whether Gaydos was Brown's co-employee "acting in the same employ" on the date of the accident.  *See id.* at 19, 23.

Conversely, Gaydos argues "[t]here can be no serious debate that [he], as the part owner of ACS, who managed ACS employees and worked alongside them on the job site at issue[,] was a 'co-employee' of Brown."  Gaydos' Supplemental Brief at 11.  He postulates:

> To hold otherwise would expose thousands of small business owners, who choose to organize their businesses into a corporation or limited liability company, personally liable to employees for work-related injuries, even though those employees were eligible for and received workers compensation benefits. . . .

*Id.*

Moreover, Gaydos insists Brown misconstrues the holding in *Bell*, which, he asserts, was based on the defendant's waiver of the co-employee immunity defense, and not a determination of whether the defendant was "in the same employ" as the injured plaintiff at the time of the accident.  *See* Gaydos Supplemental Brief at 11-12.  He contends "the facts are unrefuted . . . that

Brown and Gaydos were 'in the same employ' at the time of the accident[,]" summarizing:

> Brown and Gaydos were both working for ACS at all relevant times. Gaydos was working on the jobsite on the day of the accident. The [skid loader] was needed to complete the job for ACS. [Gaydos Deposition at 136-37]. Brown was employed by ACS and was in the course and scope of his employment when he attempted to use that machine and was injured. . . .

*Id.* at 14. Gaydos argues Brown's assertion that "he is not suing Gaydos as the co-employee/member of ACS, but as the individual owner of the skid loader and the operator of a separate business[,]" is merely an attempt to assert the dual capacity doctrine without explicitly referring to it. *See id.* at 14-15.

We begin by considering this Court's decision in *Bell*, which Brown insists is controlling, and Gaydos asserts is *dicta*. In that case, the defendant was injured during a work shift for the employer and transported off-site to a health clinic. *See Bell*, 943 A.2d at 295. Because they were discharged from the clinic after their shift ended, the defendant proceeded directly to the employee parking lot to retrieve their car. *Id.* The defendant was driving with one arm in a sling when they struck the plaintiff, who was a security supervisor also working for the employer. *Id.* at 295-96. Although the plaintiff received workers' compensation benefits from the employer, they subsequently filed a personal injury action against the defendant, alleging the defendant was negligent by driving too fast. *Id.* at 296. A jury returned a verdict in favor of the plaintiff. *Id.*

After several procedural missteps, the defendant filed a petition to strike the judgment, which the trial court denied. *See Bell*, 943 A.2d at 296. The defendant then appealed to this Court, arguing that they were entitled to co-employee immunity under the WCA. *See Bell*, 943 A.2d at 296-97. A panel of this Court, however, determined that the defendant had waived the affirmative defense of Section 72 co-employee immunity because they did not raise it in a responsive pleading — instead they asserted it for the first time in a petition to strike the judgment filed several years after judgment was entered in favor of the plaintiff. *See Bell*, 943 A.2d at 298.

Despite the fact the *Bell* Court determined the defendant had waived the ultimate factual issue, it framed the relevant factors in a co-employee immunity case as follows:

> [T]he mere fact that both parties held positions of employment with the same employer at the time of the accident is not sufficient to show that they were in the same employ at the time of the accident. Rather, the act or omission must occur while both employees are **in the performance of their duties as employees**. In order to establish immunity under the [WCA], the **defendant** is required to establish that [their] act or omission occurred while [they were] in the same employ as the plaintiff, that is, **in the course of [their] performance of duties for the employer**.

*Id.* at 297–98 (quotation marks omitted; some emphases added), *citing Fern v. Ussler*, 630 A.2d 896 (Pa. Super. 1993), *appeal granted*, 652 A.2d 1326 (Pa. 1994).[12] We note that the *Bell* Court cited the decision in *Fern* for the

---

[12] Although the Supreme Court apparently granted *allocatur* review in *Fern*, there is no subsequent history concerning the outcome of that appeal.

language at issue, and the precedential value of that case is debatable — **Fern** was decided by a three-judge panel, with one judge concurring in the result and one judge dissenting. **See Fern**, 630 A.2d at 899. Nonetheless, both the **Bell** and the **Fern** Courts relied upon the factual circumstances presented in the Supreme Court's decision in **Apple**, **supra**, to support their conclusion that, to establish co-employee immunity under Section 72, more evidence is required than simply the fact that both the plaintiff and the defendant worked for the same employer. Indeed, in **Apple**, the Court found significant the fact that the parties were "acting in furtherance of their duties at the time [of the negligent act], and in a manner approved by their employer." **Apple**, 278 A.2d at 484.

By way of background, in **Apple**, the plaintiff and defendant taught at the same school at the time the plaintiff was injured while a passenger in the defendant's car. **See Apple**, 278 A.2d at 483.

> It was the practice in the school in which they taught to meet their respective classes at one school building, take the roll and lunch count, and thereupon the pupils were transported by school bus to another school building where school classes were held. These two teachers had no specific duties to perform on the school bus and were officially authorized to proceed to the classroom site, either by means supplied by themselves or on the school bus. When the accident occurred they were in transit from the first to the second school.

**Id.**

In addition to receiving workers' compensation benefits from the school board, the plaintiff filed a trespass action against the defendant. **Apple**, 278 A.2d at 483. The trial court, however, granted a nonsuit at the close of the

plaintiff's case, concluding that both the plaintiff and defendant "were acting within the scope of their employment and in the course of their employer's business; that the Act was applicable; [and] that [Section 72] did provide immunity from liability for [the defendant.]" **Id.** On appeal, the plaintiff attempted to distinguish between a defendant who commits a negligent act while acting withing the **scope** of their employment, from one who acts within the **course** of their employment. **See id.** at 484. The Supreme Court rejected that distinction, noting that Section 72 does not refer to either the course or scope of employment. **See id.** Rather, the Court emphasized:

> [V]iewing the evidence here, we entertain no doubt whatsoever that the injuries in this case were caused while the [plaintiff] **and** [defendant] were 'in the same employ'. Both parties were proceeding from one place of employment to another **during their working day, acting in furtherance of their duties at the time, and in a manner approved by their employer**. . . .

**Id.** (emphases added).

Therefore, in **Apple**, the Court determined the defendant was the plaintiff's co-employee for purposes of WCA immunity when, at the time of the defendant's negligent act, both parties were not only working for the same employer/school, but also performing acts in furtherance of their duties — *i.e.*, traveling from one school to another — in a manner approved by their employer/school.

We conclude that in the case *sub judice*, there is a genuine issue of material fact as to whether Gaydos was acting within "the same employ" as Brown — that is, acting in furtherance of his duties as an employee/co-owner

of ACS and in a manner approved by ACS — at the time of Brown's injury. **See** *77 P.S. § 72.*

First, in his deposition, Gaydos admitted **he** owned the skid loader in question, and that **Gaydos Construction** "covered the [insurance] policy on it[.]" Gaydos Deposition at 43. In fact, when questioned whether ACS would insure the skid loader if it was used on an ACS job site, Gaydos admitted he did not know, although he appeared to characterize the skid loader as a covered "tool."[13] *Id.* at 42-43. Gaydos further acknowledged that "[t]he skid loader was **loaned** to [ACS] for contracting jobs[,]" and stated that he performed the maintenance on the skid loader himself. *Id.* at 44, 82 (emphasis added).

Moreover, although Gaydos and Raymond agreed to provide their own tools and equipment for ACS jobs, this purported agreement was not in writing, and Gaydos stated they did so because ACS had "no money in the bank account to purchase the equipment." **See** Gaydos Deposition at 44. Gaydos further acknowledged that he "loaned" the skid loader to ACS for certain jobs but stated there was "no lease" or "transfer of money." *Id.* at 44, 47. He also emphasized that the ACS employees understood he was to be "the **sole operator** of that piece of equipment." *Id.* at 49 (emphasis added).

_____

[13] It is readily apparent that a skid loader does not equate to a "tool," such as a hammer or drill.

Furthermore, while Gaydos claims he brought the skid loader to the job site on the morning in question for use on that particular ACS job,[14] that "fact" is not supported by the record. Rather, in his deposition, Gaydos testified, generally, that he had "loaned" the skid loader to ACS for concrete jobs on 15 occasions between April and September of 2016, and that on the morning of the incident, he arrived early, and then left to "go pay a vendor." *See* Gaydos Deposition at 44-45, 60. He did not mention whether he brought the skid loader to the job site that morning for a particular purpose which related to that particular job. He also stated that ACS employees were not to use the skid loader when he was not there, and "there was other work that could have been done" in his absence. *Id.* at 60. Therefore, the record contains a genuine issue of material fact as to whether Gaydos actually intended to use the skid loader at the job site on the morning in question. *See Risperdal Litigation*, 223 A.3d at 639 ("The trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party.").

The facts presented in this case are significantly different from those in which a co-owner or manager has been found to be immune from civil liability

_____

[14] *See* Gaydos' Supplemental Brief at 14. Although Gaydos cited pages 136-137 of his deposition testimony to support this statement, those pages are not included in any of the exhibits in the certified record. *See supra* n.10. Nonetheless, we acknowledge that Gaydos' entire deposition transcript is included in Brown's reproduced record, and the pages he cites do not support this factual claim. *See* Brown's Reproduced Record at 173a-174a.

as a co-employee under the WCA. *See Jadosh*, 275 A.2d at 452-54 (defendant manager was entitled to co-employee immunity pursuant to WCA where allegedly defective piece of equipment was property of employer, and plaintiff alleged manager was negligent in simply performing duties for employer); *Adams v. U.S. Air, Inc.*, 652 A.2d 329, 330-31 (Pa. Super. 1994) (defendant managers were entitled to co-employee immunity pursuant to WCA when plaintiff's negligence claims were based on firing following managers' internal investigation of plaintiff's violation of company policy). Here, the co-owner — Gaydos — operated a **separate sole proprietorship**, that independently owned, maintained, and insured the allegedly defective skid loader which caused Brown's injuries. Although Gaydos may have "loaned" the skid loader to ACS free of charge, he made it clear that none of ACS's employees were to operate it.

Lastly, it merits emphasis that Brown sued Gaydos, as **owner of the skid loader** — not as his employer or co-employee — based upon Gaydos's personal failure to "exercise reasonable care in the safe, proper and lawful maintenance of the subject skid loader[,]" including his failure to warn Brown that "the safety mechanism[s] were not working properly[.]" *See* Brown's Complaint at ¶¶ 28-29. Contrary to Gaydos' assertion, this argument is not merely a dual capacity claim in disguise. *See* Gaydos' Supplemental Brief at 14-15. First, the dual capacity doctrine undermines **employer** immunity pursuant to Section 481(a), not co-employee immunity under Section 72. *See Neidert*, 143 A.3d at 388. Second, the doctrine is not applicable when, as

here, the employee's injury occurred "while he was actually engaged in the performance of his job." *Id.* at 390 (citation & emphasis omitted).

Moreover, Brown does **not** argue that Gaydos was operating under two personas when the accident occurred — that is, as his employer and as the owner of the skid loader. **See** Gaydos' Supplemental Brief at 17-18. Rather, he contends Gaydos is liable for his injuries solely "as the owner/operator of a negligently maintained skid loader that he loaned to a separate business entity, ACS." Brown's Substitute Brief at 14. Upon our review, we conclude that the determination of whether **Gaydos** was working "in the course of [his] performance of duties for the employer[,]"[15] ACS, is a genuine issue of material fact since Gaydos admitted the following: (1) his sole proprietorship owned, maintained, and insured the skid loader, (2) he loaned the skid loader to ACS for use on job sites, although it is not clear if he intended to use the skid loader at the job site in question, and (3) he was the only person permitted to use the equipment, that he owned, maintained, and insured. Accordingly, the trial court erred in granting summary judgment on this basis.[16]

_____

[15] **See Bell**, 943 A.2d at 298.

[16] Gaydos' proclamation that our ruling will "expose thousands of small business owners" to personal liability for injuries to their employees even though those employees received workers' compensation benefits is simply untrue. **See** Gaydos' Supplemental Brief at 11. We conclude Gaydos **may** be liable to Brown not as small business owner who paid for Brown's workers' compensation insurance, but as an individual, who brought an **allegedly** defective skid loader to a job site without proper warnings or instructions.

Therefore, because we conclude that the record contains a genuine issue of material fact regarding both bases upon which the trial court granted summary judgment, we reverse the order on appeal and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Panella, Judges Lazarus, Dubow, Nichols, McLaughlin and Sullivan join the Opinion.

Judge Stabile files a Dissenting Opinion in which Judge Olson joins.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/7/2023

- 23 -